UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE WIL QUINTEROS RAMIREZ, and
JOSE HONORIO PADILLA
DELGADILLO,

Petitioners,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

Case No.  1:26-cv-03361-JLT-HBK (HC)

FINDINGS AND RECOMMENDATIONS TO
GRANT PETITION FOR WRIT OF HABEAS
CORPUS [1]

(Doc. 1)

FIVE-DAY OBJECTION PERIOD

Petitioners Jose Wil Quinteros Ramirez ("Quinteros Ramirez") and Jose Honorio Padilla Delgadillo ("Padilla Delgadillo") are immigrant detainees in U.S. Immigration Customs and Enforcement ("ICE") custody at the California City Detention Center in California City, California.  They initiated this action by filing a counseled joint petition for writ of habeas corpus under 28 U.S.C. § 2241, docketed on May 1, 2026.  (Doc. 1, "Petition").[2]  The Petition asserts: (1) that detaining Petitioners, noncitizens who entered and resided in the interior of the United States prior to arrest, under 8 U.S.C. § 1225(b)(2) rather than § 1226(a) violates the Immigration

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

[2] Petitioners also filed a motion for temporary restraining order on May 1, 2026.  (Doc. 2, "TRO").  On May 4, 2026, the assigned district judge denied the TRO as untimely and referred the matter to the undersigned for a determination on the merits.  (Doc. 7).

and Nationality Act ("INA"); and (2) that detaining them without a bond hearing violates their procedural due process rights under the Fifth Amendment. (*Id*. at 11-12). As relief, the Petition seeks, *inter alia*, immediate release, or alternatively, a bond hearing pursuant to § 1226(a) within seven days. (*Id*. at 13).

Respondents acknowledge that courts in this district have rejected the government's position that noncitizens who unlawfully enter the country are subject to mandatory detention under 8 U.S.C. § 1225(b). They contend that if this Court agrees, it should deny release and instead order a bond hearing. (Doc. 8 at 2). Petitioners reply that immediate release is the appropriate remedy, or alternatively, that the Court should order a bond hearing at which DHS bears the burden of proving danger and flight risk by clear and convincing evidence. (Doc. 9).

Petitioners are noncitizens who entered the United States without inspection and lived here for approximately twenty years before being apprehended and placed in standard removal proceedings under § 1229a. The undersigned recommends the district court grant the Petition on Petitioners' INA claim (claim one).[3]

I.      BACKGROUND

Petitioners are ICE detainees at the California City Detention Center in California City, California. The Court briefly summarizes each Petitioner's background.

A. <u>Jose Wil Quinteros Ramirez</u>

It is uncontested that Quinteros Ramirez is a native and citizen of El Salvador who entered the United States without inspection in or around 2003. (Doc. 1 at 7). He has lived in the United States for over twenty years and has no known criminal charges. (*Id*.; Doc. 8-2 at 3).

On January 21, 2026, Enforcement and Removal Operations ("ERO") officers apprehended him during a vehicle stop in Salisbury, MD. (Doc. 8-2 at 3). That same date, U.S. Citizenship and Immigration Services ("USCIS") issued a Notice to Appear charging him removable under 8 U.S.C. § 1182(a)(6)(A)(i) (entry without inspection) and U.S.C. § 1182(a)(7)(A)(i)(I) (no valid entry document). (Doc. 8-2 at 5). He intends to apply for

---

[3] In light of the Court's conclusion that Petitioners' detention violates the INA and recommendation that they be immediately released, the Court declines to address Petitioners' additional claim for relief.

2

asylum/withholding of removal and U-Nonimmigrant status. (Doc. 1 at 7). On March 25, 2026, an immigration judge denied his bond request pursuant to *Matter of Yajure Hurtado*, 29 I.&N. Dec. 216 (BIA 2025). (*Id*. at 7-8). He remains detained at the California City Detention Facility. (*Id*. at 6-7).

### B. Jose Honorio Padilla Delgadillo

It is undisputed that Padilla Delgadillo is a native and citizen of Mexico who entered the United States without inspection in or around 2006. (Doc. 1 at 8). He has lived in the United States for approximately twenty years, has a U.S. Citizen fiancée, and has four U.S. citizen children. (*Id*.). His documented criminal history includes a 2012 narcotics-possession arrest and 2025 misdemeanor failure-to-appear. (Doc. 8-1 at 15-19).

On January 27, 2026, a Border Patrol Agent apprehended Padilla Delgadillo while he was running in a residential neighborhood in Compton, CA. (Doc. 8-1 at 3). On January 28, 2026, USCIS issued a Notice to Appear charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i) (alien entry without inspection). (Doc. 8-1 at 7). He intends to seek cancellation of removal, and his fiancée plans to file an I-130 petition for alien relative. (Doc. 1 at 8-9). On March 13, 2026, an immigration judge denied his bond request pursuant to *Matter of Yajure Hurtado*, 29 I.&N. Dec. 216 (BIA 2025). (*Id*. at 9). He remains detained at the California City Detention Facility. (*Id*. at 8).

### II.    APPLICABLE LAW AND ANALYSIS

#### A. Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). District courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order. *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 538 U.S. 281, 294 (2018).

#### B. Claim One: Violation of the INA

Petitioners argue that Respondents' interpretation of 8 U.S.C. § 1225(b)(2) as requiring

3

mandatory detention of noncitizens, like them, who entered without inspection and lived in the interior of the United States for decades before being apprehended violates the INA.  (Doc. 1 at 3-4).  They maintain that noncitizens who previously entered and were later apprehended in the interior are detained under 8 U.S.C. § 1226(a), not § 1225(b)(2).  The Court therefore briefly outlines the statutory and legal framework governing detention authority under the INA.

Section 1225(a)(1) provides that an alien present in the United States who has not been admitted, or who arrives in the United States, is deemed an "applicant for admission." Applicants for admission must be inspected by immigration officers consistent with U.S. immigration law. *Jennings*, 583 U.S. at 287 (quoting § 1225(a)(3)).  If an immigration officer determines that an arriving alien is inadmissible and the alien does not indicate an intention to apply for asylum or express a fear of persecution, the officer must order the alien removed without further hearing or review.  § 1225(b)(1)(A)(i); 8 U.S.C. § 1182(a)(7).  With limited exceptions, § 1225(b)(2)(A) directs that if am applicant for admission is not "clearly and beyond a doubt" entitled to be admission, "the alien *shall* be detained" for removal proceeding under 1229a.  § 1225(b)(2)(A) (emphasis added).  Applicants for admission may be released on parole only for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)).

Section 1226(a) authorizes the arrest and detention of an alien pending a decision on removal and grants the government broad discretion to continue detention or release the alien on bond or conditional parole.  § 1226(a); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)).  Federal regulations provide that noncitizens detained under § 1226(a) receive bond hearings at the outset of detention, where they must show by a preponderance of the evidence that they are not a danger to the community and not a flight risk. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); Matter *of Guerra*, 24 I.& N. Dec. 37, 40 (B.I.A. 2006); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007).  Section 1226 also allows a detainee to request a bond hearing before an immigration judge at any time before a removal order becomes final and to seek a subsequent bond hearing upon a material change in circumstances.  *Rodriguez Diaz*, 53 F.4th at 1197 (citing 8 C.F.R. § 236.1(d)(1),

1003.19(e)).  However, § 1226(c) creates a category of aliens who may *not* be released under § 1226(a), mandating detention for certain specified criminal categories.  *Jennings*, 583 U.S. at 289 (emphasis in original).  In January 2025, the Laken Riley Act ("LRA") amended § 1226(c) to add § 1226(c)(1)(E), which requires mandatory detention of aliens who inadmissible for being present without admission or parole and who been arrested for, charged with, or convicted of certain crimes.  LRA, Pub. L. No. 119-1 (Jan. 29, 2025); *see* 8 U.S.C. § 1182(a)(6)(A)(i), § 1226(c)(1)(E).

Until 2025, DHS generally applied § 1226(a) and its discretionary release framework to most noncitizens in the United States without valid documentation.  *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *3 (N.D. Cal. Sept. 12, 2025); *see also, e.g., Escobar Salgado v. Mattos*, 2025 WL 3205356, at *3 (D. Nev. Nov. 17, 2025) (citing *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).  In July 2025, the DHS and the Department of Justice adopted a new position that § 1225, rather than § 1226, governs detention of all applicants for admission, including aliens present in the United States who have not been admitted, and that such individuals are subject to mandatory detention under § 1225(b) without bond hearings before an immigration judge, treating these aliens in the same manner that "'arriving aliens' have historically been treated."  *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited January 7, 2026).  In September 2025, the Board of Immigration Appeals issued a precedential decision adopting this interpretation and holding that immigration judges lack authority to grant bond to noncitizens present in the United States without admission, because they are applicants for admission subject to § 1225(b)(2)(A).  *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 at *9.

Here, Respondents concede that courts in this district have rejected their arguments that Petitioners, as noncitizens present in the United States without admission, are subject to the mandatory detention under § 1225(b)(2). (Doc. 8 at 2).  Petitioners contend that § 1225(b)(2) does not apply to noncitizens, like Petitioners, who previously entered and were later apprehended in

the interior; rather such individuals are governed by § 1226(a), unless § 1225(b)(1), § 1226(c), or § 1231 applies.  (Doc. 1 at 3-4, 11).  The Court agrees for the reasons summarized below, which have been extensively analyzed by district courts nationwide.

The Court's analysis begins with the statutory text.  The ordinary language of the statute is the starting point for its interpretation. *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989).  Fundamentally, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Sandifer v. United States Steel Corp.*, 571 U.S. 200, 227 (2014) (citation omitted).  But often "the 'meaning – or ambiguity – of certain words or phrases may only become evident when placed in context.'" *King v. Burwell*, 576 U.S. 473, 486 (2105).  Moreover, it is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted) (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001)); *see also Corley v. United States*, 556 U.S. 303, 314 (2009).  Recently, the Supreme Court emphasized that courts "must exercise independent judgment in determining the meaning of statutory provisions," and while the agency may provide guidance, the courts "may not defer to any agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 412 (2024).

Courts interpreting § 1225(b)(2) have consistently held that "seeking admission" entails some affirmative act to obtain entry. *See, e.g., Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, ---F.4th---, 2026 WL 1243395, at *8 (11th Cir. May 6, 2026) ("Petitioners were not applying for entry in any literal sense when they were detained following a traffic stop, nor were they taking any cognizable step to obtain the rights and privileges of lawful entry.  They were only present in the country.  They were not seeking or pursuing any object, let alone 'lawful entry.'"); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489-90 (S.D.N.Y. 2025); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. Aug. 29, 2025); *Lepe v. Andrews*, 2025 WL 2716910, at *5 (E.D. Cal. Sept. 23, 2025); *but see Buenrostro-Mendez v. Bondi*, 2026 WL 323330, at *4 (5th Cir. Feb. 6, 2026) ("The everyday meaning of the statute's terms confirms

6

that being an 'applicant for admission' is not a condition independent from 'seeking admission.'"); *Avila v. Bondi*, ---F.4th---, 2026 WL 819258 (8th Cir. Mar. 25, 2026).  Petitioners had resided in the United States for roughly twenty years prior to their arrests and were not taking any step to obtain admission when detained; thus, § 1225(b)(2)'s mandatory detention provision does not apply to them, regardless of whether they are labeled "applicant[s] for admission."

Petitioners also correctly note the structure of the INA, in which § 1225 governs the inspection of arriving aliens and § 1226 governs apprehension and detention of aliens already in the country.  The Supreme Court described the interplay between these provisions in *Jennings* explaining that §§ 1225(b)(1) and (b)(2) govern detention of certain noncitizens seeking admission, while §§ 1226(a) and (c) govern detention of noncitizens already in the United States pending removal.  *Jennings*, 583 U.S. at 286-89, *see also id*. at 303 ("§ 1226 applies to aliens already present in the United States. Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings."); *Romero v. Hyde*, 2025 WL 2403827, at *12-13 (D. Mass. Aug. 19, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (noting the distinction between "persons inside the United States and persons outside the United States" "is consistent with the long history of our immigration laws and with the Constitution.").  Petitioners therefore are more accurately characterized as noncitizens already in the country, albeit without legal status, subject to detention under § 1226(a).

The 2025 Laken Riley Act amendment further supports this reading.  By adding § 1226(c)(1)(E), Congress required mandatory detention for certain inadmissible noncitizens present without admission or parole who are arrested for, charged with, or convicted of specified crimes.  If, as Respondents argue, all "applicants for admission," including long-term residents present without admission, were already subject to mandatory detention under § 1225(b)(2), the new mandatory detention category in § 1226(c)(1)(E) would be largely redundant.  *See, e.g., Escobar Salgado*, 2025 WL 3205356, at *13.  "Such an interpretation, which would largely nullify a statute Congress enacted this very year, must be rejected."  *Gomes v. Hyde*, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) (citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386

(2013) ("the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."); *see also Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1152 (D. Minn. 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

Giving effect to the ordinary meaning of § 1225(b)(2)(A)'s terms, and reading § 1225 and § 1226 together within the INA's overall structure, Respondents' new interpretation of § 1225(b)(2) is inconsistent with the statute.  Legislative history, congressional intent, longstanding agency practice, and the decisions of numerous district courts further confirm that long-term, uninspected residents such as Petitioners are detained under § 1226(a), and that their mandatory detention under § 1225(b)(2) is unlawful.  *See Escobar Salgado*, 2025 WL 3205356, at *11 (citing *Biden v. Texas*, 597 U.S. 785, 804 (2022)); *Maldonado*, 795 F. Supp. 3d at 1150; *Salcedo Aceros*, 2025 WL 2637503, at *11-12; *Gomez v. Doe*, 2025 WL 3269886, at * (D. Ariz. Nov. 3, 2025) (collecting cases).

District courts across the country, including in the Eastern District of California, have largely rejected Respondents' position that all noncitizens who entered without inspection and have lived in the United States for years or decades are "applicants for admission" subject to § 1225(b)(2).  *Moreno Vergel v. Chestnut*, 2026 WL 32848, at *3 (E.D. Cal. Jan. 6, 2026) (collecting cases in the Eastern District of California); *Aquino v. LaRose*, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases); *Contreras-Cervantes v. Raycraft*, 2025 WL 2952796, at *8, n.4 (E.D. Mich. Oct. 17, 2025) (collecting cases); *Echevarria v. Bondi*, 2025 WL 2821282, at *7 (D. Ariz. Oct. 3, 2025) (collecting cases); *Barco Mercado v. Francis*, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (collecting cases); *But see*, e.g., *Alonzo v. Noem*, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025); *Ramos v. Lyons*, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025) (§ 1225(b)(2)(A) applies to an alien who is physically present in the United Sates but not lawfully admitted, regardless of how long they have been physically present.").  The Court recognizes that the Ninth Circuit has not yet addressed this issue; and there is a split among the Circuit Courts that have issued decisions.  *See Cunha v. Freden*, --- F.4th ---, 2026 WL 1146044 (2nd Cir. Apr. 28, 2026); *Hernandez Alvarez v. Warden*, Fed. Det. Ctr. Miami, ---F.4th---, 2026

8

WL 1243395 (11th Cir. May 6, 2026); *but see Buenrostro-Mendez v. Bondi*, 166 4th 494 (5th Cir. 2026); Avila v. Bondi, ---F.4th---, 2026 WL 819258 (8th Cir. Mar. 25, 2026).

For these reasons, the Court concludes that Petitioners are not subject to mandatory detention under § 1225(b)(2)(A); their detention instead is governed by § 1226(a) discretionary framework.

Accordingly, it is hereby RECOMMENDED**:**

1.  The Petition for Writ of Habeas Corpus (Doc. 1) be GRANTED

2.  If the district court adopts these Findings and Recommendations, it direct that within seven (7) days of its Order, Respondents either (1) provide Petitioners with a bond hearing pursuant to 8 U.S.C. § 1226(a), or (2) release Petitioners under reasonable conditions of supervision.

////

////

////

////

**NOTICE OF EXPEDITED OBJECTIONS**

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Given the recommendation to grant the petition in part, a party may file written objections with the Court within five (5) days of service of these Findings and Recommendations.** *Id*.; Local Rule 304(b) (permitting court to set a different time). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the

9

waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).


Dated:    June 24, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE